----oo0oo----

SUSAN LYNN ADAMS AND ROBERT
SKIPTON BARRINGTON,

        Plaintiffs,

    v.

DEPUTY MICHAEL NOCON, DEPUTY
DAVID BRUEGEL, DEPUTY KAHEKILI
SETO, DEPUTY JOHN DAVIS,

        Defendants.

_____/

NO. CIV. S-07-02083 FCD EFB

MEMORANDUM AND ORDER

----oo0oo----

This matter is before the court on cross motions for partial summary judgment, pursuant to Federal Rule of Civil Procedure 56. Plaintiffs Susan Adams ("Adams") and Robert Barrington ("Barrington") move for summary judgment on their Section 1983 claim for Fourth Amendment violations, asserting that collateral estoppel bars relitigation of the search and seizure issues. Defendants Deputies Michael Nocon ("Nocon"), David Bruegel ("Bruegel"), Kahekili Seto ("Seto"), and John Davis ("Davis") (collectively, "the deputies" or "defendants") move for summary

judgment on plaintiffs' Section 1983 claim on the basis of qualified immunity; defendants also move for summary judgment on plaintiffs' various state law claims, contending that the claims for trespass, conversion, and assault and battery fail as a matter of law. For the reasons set forth below, plaintiffs' motion is DENIED, and defendants' motion is GRANTED in part and DENIED in part.

## BACKGROUND[1]

This case arises out of defendant deputies' actions during and after the arrest of plaintiff Barrington following a domestic dispute. On October 20, 2006, the San Joaquin County Sheriff Department ("SJCSD") dispatched two deputies, Bruegel and Nocon, to Barrington's residence. (UF ¶ 63.) The deputies were dispatched following a 911 call from Shirley Adams, the mother of plaintiff Susan Adams, Barrington's girlfriend. (Id. ¶¶ 57-58, 63.) Shirley Adams called 911 out of concern for her daughter's well-being. (Id.) The basis for this concern is in dispute. According to defendants, Adams called her mother crying, telling

---

[1]     Unless otherwise noted, the facts herein are undisputed. (See Pls.' Responsive Separate Stmt. of Disputed Material Facts to Defs.' Stmt of Undisputed Facts ("UF"), filed Feb. 20, 2009.) Where the facts are in dispute, the court cites either plaintiffs' version of facts, (see Pls.' Separate Stmt. of Undisputed Material Facts in Supp. of Pls.' Mot. for Partial Summ. J. ("Pls' DF"), filed Dec. 12, 2008), or defendants' version of the facts, (see Defs.' Stmt. of Undisputed Facts in Opp'n to Pls.' Mot. for Partial Summ. J. and in Support of Defs.' Countermotion for Partial Summ. J. ("Defs.' DF"), filed Feb. 6, 2009.).

    Defendants object to various pieces of evidence that plaintiffs present in support of their motion. Much of the evidence to which defendants object is immaterial to the court's analysis of the summary judgment motion. To the extent that the evidence is relevant, defendants' objections are OVERRULED.

2

her that she (Adams) and Barrington were in an argument. (Defs.'
DF ¶ 55.) Defendants assert that Adams told her mother that
Barrington was crashing his tractor into Adams' horse trailer.
(Id. ¶ 54.) Adams' mother was allegedly worried that Adams could
get hurt. (Id. ¶ 58.) Plaintiffs dispute the details of the
circumstances leading up to the 911 call.

Upon arriving at the residence, Barrington asserts that
Bruegel arrested him, handcuffed him, and placed him into the
patrol car. (Pls.' DF ¶ 8.) Barrington claims he was injured in
the process of being handcuffed and placed in the car. (UF ¶
106.) Specifically, Barrington claims that Bruegel twisted
Barrington's wrists, dislocated his shoulder, and "pushed [his]
head into the roof of the car." (Decl. of Robert Barrington Sr.
in Support of Opp'n to Defs' Mot. for Partial Summ. J.
("Barrington Decl. in Support of Opp'n"), filed Feb. 20, 2009, at
¶ 12.) Barrington also asserts that Bruegel returned to the car,
pulled Barrington out, and removed his house keys from his
pocket, at which point Barrington allegedly stated, "You can't go
into my house." (Pls.' DF ¶¶ 10-11.) Defendants claim that it
was Nocon, not Bruegel, who arrested Barrington. (Defs.' DF ¶
105.)

Upon learning that there were multiple firearms in the
residence, Bruegel called for additional assistance. (UF ¶ 135.)
Soon thereafter, Deputies Davis and Seto arrived to help
inventory weapons. (Id. ¶¶ 136-37.) It is undisputed that all
four deputies entered the residence. It is disputed whether
Adams told the deputies that she lived at the residence, whether
she consented to a search, and whether she opened the door to the

3

residence.  (See id. ¶ 12.)  Plaintiffs contend that the deputies

did not ask Adams whether she lived at the residence and that the

deputies entered the house using the keys procured from

Barrington.  (Id. ¶¶ 13-16.)

Once inside, the deputies collected and removed numerous

firearms.  Defendants claim that they collected a total of 51

firearms and transported them to the Sheriff's Department for

safekeeping.  (Defs.' DF ¶¶ 147-48.)  Plaintiffs contend that

"almost 110 firearms were missing," including several antique

firearms.  (Barrington Decl. in Support of Opp'n, ¶¶ 19, 21.)

A criminal complaint for domestic violence and assault with

a weapon was filed against Barrington in San Joaquin County

Superior Court.  (UF ¶ 168.)  Barrington filed a suppression

motion, which was heard May 29, 2007.  (Id. ¶ 169.)  Neither Seto

nor Davis testified at the hearing.  (Id. ¶ 170.)  The Superior

court suppressed the firearms, concluding that the deputies'

conduct constituted an unconstitutional search and seizure in

violation of the Fourth Amendment to the United States

Constitution.  (Id. ¶ 174.)

**STANDARD**

The Federal Rules of Civil Procedure provide for summary

adjudication when "the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no

genuine issue as to any material fact and that the movant is

entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

One of the principal purposes of the rule is to dispose of

factually unsupported claims or defenses.  Celotex Corp. v.

Catrett, 477 U.S. 317, 325, (1986).

4

In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. See Celotex, 477 U.S. at 323-24. If the moving party does not bear the burden of proof at trial, he or she may discharge this burden of showing that no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the non-moving party's case." Id. at 325. Once the moving party meets the requirements of Rule 56 by showing there is an absence of evidence to support the non-moving party's case, the burden shifts to the party resisting the motion, who "must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Genuine factual issues must exist that "can be resolved only by a finder of fact, because they may reasonably be resolved in favor of either party." Id. at 250. In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence. See T.W. Elec. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987) (citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. See Falls Riverway Realty, Inc. v.

City of Niagara Falls, 754 F.2d 49, 57 (2d Cir. 1985); Thornhill Publ'g Co., Inc. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979).

**ANALYSIS**

**I.    Title 42 U.S.C. section 1983**

Plaintiffs bring claims against defendant deputies pursuant to 42 U.S.C. section 1983, asserting, among other things, that the deputies acted under color of state law to deprive plaintiffs of their Fourth Amendment constitutionally protected rights to be free from unreasonable searches and seizures.  Pursuant to 42 U.S.C. section 1983, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."  Section 1983 confers no substantive rights itself, but rather, "provides remedies for deprivations of rights established elsewhere."  City of Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985).

Plaintiffs move for summary judgment on the grounds that collateral estoppel bars relitigation of the Fourth Amendment issue and that there are no material issues of fact as to the entry and lack of warrant.  Defendants bring a countermotion for summary judgment, contending that the 1983 Fourth Amendment claim for unreasonable search and seizure fails as a matter of law and that the deputies are entitled to qualified immunity.

/////

/////

### A. Collateral Estoppel

Plaintiffs contend that the County Superior Court's ruling on the constitutionality of the search of Barrington's residence bars relitigation of that same issue here. (Pls.' Mem. of P. & A. in Supp. of Mot. for Partial Summ. J. ("Pls.' MSJ"), filed Dec. 12, 2008, at 15.)

According to the doctrine of collateral estoppel, also known as issue preclusion, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." Allen v. McCurry, 449 U.S. 90, 94 (1980). "[R]es Judicata and collateral estoppel relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." Id.

Federal courts must give preclusive effect to state court judgments "whenever the courts of the State from which the judgements emerged would do so." Allen, 449 U.S. at 96. Thus, in determining whether to apply collateral estoppel to an issue litigated in California state court, a federal court must look to California law. Id. California law requires that: "(1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding." Reyn's Pasta Bella, LLC v. VISA USA, Inc., 442 F.3d 741, 746 (2006).

/////

For collateral estoppel to apply, the party against whom an earlier court decision is asserted must have had a "full and fair opportunity" to litigate the issue. <u>Allen</u>, 449 U.S. at 101. The Ninth Circuit has held that police officers are not in "privity" with the prosecution in a criminal case when the officers have "no measure of control" over the proceeding or "direct personal interest" in its outcome. <u>Davis v. Eide</u>, 439 F.2d 1077, 1078 (9th Cir. 1971). Moreover, the fact that the individual officers do not have counsel in connection with the criminal case is "critical" to the determination of whether they had a "full and fair opportunity" to litigate the issue. <u>See</u> <u>Yezek v. Mitchell, et al.</u>, No. C-05-03461, 2007 WL 61887, at *5 (N.D. Cal. Jan. 8, 2007).

Plaintiffs contend that the San Joaquin County Superior Court's decision--finding that the search and seizure violated the Fourth Amendment and granting Barrington's motion to suppress evidence in connection with his arrest--has a preclusive effect on the Fourth Amendment issue in this case. However, the individual deputies were not parties to the criminal case and were not represented by counsel. (<u>See</u> Decl. of Detective David Breugel in Opp'n to Pls.' MSJ ("Bruegel Decl."), filed Feb. 6, 2009, at ¶ 3; Decl. of Detective Michael Nocon in Opp'n to Pls.' MSJ ("Nocon Decl."), filed Feb. 6, 2009, at ¶ 2; Seto Dep., filed Feb. 6, 2009, at 215:12-216:10.) In fact, two of the deputies, Deputies Davis and Seto, did not even testify at the criminal proceeding, and Deputies Bruegel and Nocon only participated as witnesses. (<u>See</u> Bruegel Decl. ¶ 3; Nocon Decl. ¶ 2; Seto Dep. 215:12-216:10.) For these reasons, the court cannot find that

the deputies were "in privity with a party at the first proceeding"; nor can the court find that the deputies had a "full and fair opportunity" to litigate the issue in the first proceeding. Thus, plaintiffs' motion for summary judgment on this basis is DENIED.[2]

## B. Qualified Immunity

As to plaintiffs' constitutional claim for unlawful search and seizure in violation of the Fourth Amendment, defendants move for summary judgment on the ground of qualified immunity.

Public officials are entitled to qualified immunity for acts that do not violate "clearly established . . . constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Thus, when considering a defendant's motion for summary judgment on the ground of qualified immunity, the court must determine whether, "taken in the light most favorable to the party asserting injury, the facts alleged show that the officer's conduct violated a constitutional right." Bingham v. City of Manhattan Beach, 329 F.3d 723, 729 (9th Cir. 2003) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)), superceded by 341 F.3d 939 (9th Cir. 2003). The court must also determine whether the right violated or the law governing the official's conduct was clearly established such that "'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Id. (quoting

---

[2]     Plaintiffs also seek summary judgment on the basis that there is no genuine issue of material fact as to whether Barrington was present and objecting to the deputies entry into his residence. (Pls.' MSJ at 18.) The court addresses this issue, *infra*, in Section B.1.b.

<u>Saucier</u>, 533 U.S. at 202); <u>Act Up!/Portland v. Bagley</u>, 988 F.2d 868, 871 (9th Cir. 1993). According to the U.S. Supreme Court, lower courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis [i.e., constitutional violation or "clearly established"] should be addressed first in light of the circumstances in the particular case at hand." <u>Pearson v. Callahan</u>, 129 S. Ct. 808, 818 (2009).

Where a defendant's conduct violates constitutional rights and the law is clearly established, the defendant may not claim qualified immunity.

### 1. Constitutional Violation

Defendants' contend that there was no constitutional violation because (1) Adams consented to the deputies' entry and she had actual and apparent authority to do so and (2) Barrington's claim that he objected to the entry in his declaration is inconsistent with his deposition testimony and thus, should be given no weight.

### a. Adams' Consent

Defendants first contend that there is no triable issue of material fact as to whether Adams consented to the deputies' entry into the residence.[3] (Defs.'s Combined Opp'n to Pls.' MSJ & Countermotion for Summ. J. ("Defs.' MSJ"), filed Feb. 6, 2009, at 25-28.) It is well settled in Fourth Amendment jurisprudence "that one of the specifically established exceptions to the

_____

[3] Defendants further contend that Adams had actual or apparent authority to consent. Because the court finds triable issues of material fact as to whether Adams consented at all, the court does not reach the issue of authority.

requirements of both a warrant and probable cause is a search

that is conducted pursuant to consent." <u>Schneckloth v.

Bustamonte</u>, 412 U.S. 218, 219 (1973). Such consent must be

"freely and voluntarily given." <u>Id.</u> at 222. In determining the

validity of consent, the Ninth Circuit requires that the

government show "that there was no duress or coercion, express or

implied" and that the consent was "'unequivocal and specific' and

'freely and intelligently given.'" <u>United States v. Shaibu</u>, 920

F.2d 1423, 1426 (9th Cir. 1990) (quoting <u>United States v. Page</u>,

302 F.2d 81, 83-84 (9th Cir. 1962) (footnotes omitted)). Because

the sanctity of the home is at the "very core" of the Fourth

Amendment, courts should be reluctant to infer consent in the

context of home searches. <u>Id.</u> Thus, mere acquiescence to a

claim of lawful authority is not sufficient. <u>Id.</u>

Defendants, as the moving party, have the burden of

demonstrating that there is no genuine issue of material fact

regarding Adams' consent. <u>See</u> <u>Celotex Corp.</u>, 477 U.S. at 325.

Defendants cannot meet this burden, as both Adams' deposition and

her declaration provide evidence in support of plaintiffs'

contention that Adams did not give consent (even if they do not

provide evidence that she affirmatively *refused* consent). Adams

testified in both her deposition and her declaration that the

deputies did not ask her permission to enter and that she did not

unlock the door or let them in the residence herself.

Defendants note that during Adams' deposition, Adams did not

specifically state that she refused consent. (Defs.' MSJ at 26.)

Rather, she testified that she "did not recall" what she said to

the deputies and what they said to her. (Adams' Dep., filed Feb.

11

6, 2009, at 540:1-10.)  Defendants argue that the court cannot now consider contradictory statements in Adams' declaration that she refused consent.  (Defs.' MSJ at 26.)  However, Adams does not claim in her declaration that she "refused consent"; she merely states that "at no time did Deputy Bruegel or any other deputy ask me for permission to enter the home."  (Decl. of Susan Adams in Support of Pls.' Mot. for Partial Summ. J. ("Adams' Decl. in Support of Pls.' MSJ"), filed Dec. 12, 2008, at ¶ 2.) Furthermore, Adams testified in her deposition that she saw the officers unlock the door using Barrington's keys and that she "did not want [the deputies] to go in."  (Adams' Dep., 304:13-25; 305:2-25; 540:15-18.)  As such, the court finds that Adams' statements in her declaration are not contradictory to testimony in her deposition.

The court therefore finds that there is a triable issue as to whether Adams' indeed gave "unequivocal and specific" consent to enter the residence.  See Shaibu, 920 F.2d at 1426.

### b.  Barrington's Objections

Defendant's also argue that there is no triable issue of fact as to Barrington's alleged objection to the entry.  (Defs.' MSJ at 29-30.)

"The Fourth Amendment recognizes a valid warrantless entry and search of premises when police obtain the voluntary consent of an occupant who shares, or is reasonably believed to share, authority over the area in common with a co-occupant who later objects to the use of evidence so obtained."  Georgia v. Randolph, 547 U.S. 103, 106 (2006) (citing Illinois v. Rodriquez, 497 U.S. 177 (1990)).  However, the police have "no recognized

authority in law or social practice" to enter the residence over the objection of a "present and objecting co-tenant." Id. at 114. According to the Supreme Court, a "disputed invitation, without more, gives a police officer no better claim to reasonableness in entering than the officer would have in the absence of any consent at all." Id.

Plaintiffs present evidence that Barrington objected to the deputies' entry. Defendants contend that Barrington first raised this issue in his declaration, thus contradicting his prior testimony during deposition. (Defs.' MSJ at 13.) Defendants point to the fact that Barrington responded "no" when he was asked during his deposition whether he said anything beyond complaining to Bruegel about pain in his shoulder "*during this time period*" (i.e., during the arrest). (Barrington Dep., 305:10-13.) As the deposition progressed, however, Barrington remembered various verbal exchanges with Bruegel subsequent to the arrest; specifically, he remembered speaking to Bruegel while Bruegel allegedly removed keys and a knife from Barrington's pockets. (See id. 324:2-5 ("[Bruegel] said, 'Which pocket are your house keys in,' and started to go through my pockets, and I, again, asked for a supervisor to come out, that I didn't want them in my house.").) When asked specifically whether Barrington said anything when Bruegel took the keys out of Barrington's pocket, Barrington responded that he said, "'You can't take those.'" (Barrington Dep., 325:12-14.) As such, the court finds that Barrington's statements in his declaration are not contradictory to testimony in his deposition.

/////

13

1   The court therefore finds that Barrington's deposition

2   testimony, coupled with his declaration, presents a triable issue

3   of material fact as to whether he objected to the deputies' entry

4   into his residence.

5               **2.   "Clearly Established"**[4]

6       Defendants contend that the rule disallowing entry into a

7   residence over the objections of a present objecting occupant was

8   not "clearly established" at the time of the alleged Fourth

9   Amendment violation.

10      <u>George v. Randolph</u>, holding that the consent of one co-

11  tenant does not prevail over the objections of another present

12  co-tenant, was decided almost seven months prior the disputed

13  actions in this case.  547 U.S. at 114.  Defendants' contentions,

14  that the law was not "clearly established" because the deputies

15  and Sheriff's Department were not *aware* of <u>Randolph</u>, is

16  unavailing.  (<u>See</u> Defs.' MSJ at 25 (stating that "[p]laintiff's

17  own police procedures expert testified in his deposition that . .

18  . he was not aware of <u>Randolph</u> until November 2008").)  The

19  Supreme Court decided <u>Randolph</u> on March 22, 2006; the alleged

20  constitutional violations in this case took place on October 20,

21  2006.  Defendants cite no authority to support their assertion

22  that subjective lack of knowledge renders the law unclear.

23  Accordingly, the court finds that the right was "clearly

24  /////

25

26      [4]   Defendants raise no argument regarding whether the law
    of consent generally (i.e., that valid consent must be "freely
27  and intelligently given") was clearly established at the time of
    the incident.  Accordingly, the court does not address that
28  issue.

                              14

established" at the time of the alleged constitutional violations.

For the foregoing reasons, the court finds that defendants have not met their burden under Rule 56 for summary judgment based on qualified immunity.

## II. State Law Claims

### A. State Law Claim of Trespass and Conversion

#### 1. California Government Code § 821.8

Defendants argue that plaintiffs' state trespass claim should be dismissed because it is barred by California Government Code Section 821.8. (Defs.' MSJ at 34.)

Section 821.8 provides: "A public employee is not liable for an injury arising out of his entry upon any property where such entry is expressly or impliedly authorized by law." Cal. Gov't Code § 821.8. This section may serve as a bar to a claim for trespass when a valid search warrant authorized entry onto the property and the structures located thereon. Ogborn v. City of Lancaster, 101 Cal. App. 4th 448, 462 (2002). However, there is no immunity for claims arising out of the entry onto property or the seizure of property not authorized by law. See id. ("[T]his immunity provision does not bar the [plaintiffs'] claim for conversion of their belongings, *which were not within the scope of the warrant*.") (emphasis added).

After receiving Shirley Adam's 911 call, the deputies promptly arrived at Barrington's residence to investigate the alleged domestic dispute. When they arrived, Adams and Barrington were outside the residence. As such, the deputies responded appropriately by approaching and questioning Adams and

15

Barrington on Barrington's property. However, California Government Code Section 831.8 does not necessarily immunize the deputies for their subsequent entry *into* the residence, especially when the subjects of the 911 call, Barrington and Adams, were *outside* (and Barrington was already secured in the patrol car at the time the deputies entered the residence).

Defendants reliance on <u>Ogborn</u> is unavailing. <u>Ogborn</u> held that the immunity provision barred plaintiff's trespass claim "*because* the warrant clearly authorized entry onto the Property *and into* the structures located there." 101 Cal. App. 4th at 462 (emphasis added). Thus, to the extent defendants went beyond the bounds of the warrant, they were not immune. <u>Id.</u> As discussed above in the court's analysis of plaintiffs' section 1983 claim for violation of the Fourth Amendment, plaintiffs in this case have raised a triable issue of fact that defendant deputies unlawfully entered the premises.

Therefore, because there exists a factual issue as to whether the deputies were lawfully on the premises, the court cannot grant defendants' motion for summary judgment on this basis.

### 2. California Penal Code § 12028.5(k)

Defendants next argue that California Penal Code Section 12028.5 bars plaintiffs' state law claims for trespass and conversion because the deputies' conduct falls within the statute's "good faith" defense.

Penal Code Section 12028.5(b) provides that a law enforcement official "who is at the scene of a domestic violence incident involving a threat to human life or a physical assault,

16

shall take temporary custody of any firearm or other deadly weapon in plain sight or discovered pursuant to a consensual or other lawful search as necessary for the protection of the peace officer or other persons present." Cal. Penal Code § 12028.5(b). Section 12028.5(k) states that "[t]he law enforcement agency, or the individual law enforcement officer, shall not be liable for any act in the good faith exercise of this section." Cal. Penal Code § 12028.5(k).

Although the statute provides that peace officers at the scene of a domestic violence dispute "shall" take temporary custody of firearms, peace officers do not have free range to conduct limitless searches and seizures. Defendants emphasize the word "shall," and claim that this alone supports their contention that the deputies acted in good faith. (See Defs.' MSJ at 35) (quoting Cal. Penal Code § 12028.5(b) and noting that the deputies seized the weapons in response to the 911 call and to Adams' alleged statements to the deputies that Barrington had beaten her and used a gun on her). However, the statute also requires that weapons subject to seizure be discovered "in plain sight" or found in the course of a "consensual" or other "lawful" search. Cal. Penal Code § 12028.5(b). As discussed in the context of plaintiffs' section 1983 claim for violation of the Fourth Amendment, plaintiffs have raised a triable issue of fact that defendant deputies unlawfully entered the premises. Whether the deputies entered the residence and seized the weapons under the good faith belief that California Penal Code section 12018.5 required them to do so likewise presents genuine issues of material fact. Furthermore, the statute requires seizure of

17

weapons "as necessary for the protection of the peace officer or other persons present." <u>Id.</u> Neither party presents evidence that the deputies or the "person[] present" (i.e., Adams) were in any danger at that point, as Barrington was already secured in the patrol vehicle. Examining all the evidence in the light most favorable to the non-moving party, <u>Diebold</u>, 369 U.S. at 655, the defendants have not met their burden of showing an "absence of evidence to support the non-moving party's case." <u>Celotex</u>, 477 U.S. at 325.

### 3. Tort Claims Act

Defendants further contend that Barrington's claim for trespass and conversion is barred in part and that Adams' claim for trespass and conversion is barred *in toto* due to Barrington's and Adams' failure to comply with the Tort Claims Act.

California Government Code Section 911.2(a) states: "A claim relating to a cause of action for death or for injury to person or to personal property or growing crops shall be presented . . . not later than six months after the accrual of the cause of action." Cal. Gov't Code § 911.2(a). A claim shall include, among other things, "[t]he name or names of the public employee or employees causing the injury, damage, or loss, if known." Cal. Gov't Code § 910(e). "A plaintiff need not allege strict compliance with the statutory claim presentation requirement"; rather, the test to be applied is one of "substantial compliance." <u>State of California v. Superior Court</u>, 32 Cal. 4th 1234, 1245 (2004); <u>Wheeler v. County of San Bernardino</u>, 76 Cal. App. 3d. 841, 847 (1978). The purpose of the Tort Claims Act is to put the public entity and/or officials on notice and to allow

18

for "the early investigation of the facts . . . ." State of
California v. Superior Court, 32 Cal. 4th at 1245; Wheeler, 76
Cal. App. 3d. at 847.

Plaintiff Barrington filed a tort claim naming Breugel,
Nocon, and "two other sheriff deputies." (Ex. A to Decl. of
Richard Pietz in Opp'n to Pls.' Mot. for Partial Summ. J. ("Pietz
Decl."), filed Feb. 6, 2009, at 3.) Adams filed a tort claim
without specifically naming any of the defendants; instead, she
signed under penalty of perjury that the identities of the
deputies were "unknown" at the time. (Ex. B to Pietz Decl., at
1.)

California Government Code section 910(e) requires that
plaintiffs name the public employees "if known." Defendants cite
plaintiffs' depositions for the proposition that Barrington and
Adams did in fact know the identities of all the deputies.
During their depositions, both Barrington and Adams answered in
the affirmative when asked if they knew who the deputies were and
whether they had seen them before, (see Barrington Dep. 287:17-
288:7; Adams Dep. 253:17-256:12); notably, however they were not
asked whether they knew the names of the specific deputies at the
time of the incident or at the time they filed their claims.
Defendants also point to plaintiff Adams previous encounters with
two of the deputies. (Defs.' MSJ at 37.) However, the fact that
she "recognized" the two deputies does not demonstrate that she
knew their names at the time she filed her claim. At most, the
evidence proffered by defendants shows that Adams *could have*
known the deputies identities.
/////

Defendants mistakenly cite <u>Nguyen v. Los Angeles County</u> <u>Harbor/UCLA Medical Center</u> for the proposition that the doctrine of substantial compliance does not apply here. However, according to <u>Nguyen</u>, "when the underlying purposes of the claims statutes have been satisfied, the courts should employ a substantial compliance test to determine whether the plaintiff has met the filing requirements." 8 Cal. App. 4th 729, 732 (1992). "The doctrine of substantial compliance prevents the public entity from using the claims statutes as 'traps for the unwary' when their underlying purposes have been met." <u>Id.</u> at 732-33 (internal citations omitted). Plaintiffs' respective claims were sufficient to provide notice to the individual deputies, allowing for "the early investigation of the facts." <u>State of California v. Superior Court</u>, 32 Cal. 4th at 1245. Defendants cite no facts to the contrary.

Given the purpose of the statute and the flexibility of the "substantial compliance" standard, the court finds that plaintiffs have adequately satisfied the requirements of the California Tort Claims Act.

**B. Barrington's State Law Claim for Assault and Battery**

Plaintiffs allege state tort claims for assault and battery against deputies Bruegel and Nocon. Defendants contend that there are no triable issues of material fact as to whether Nocon committed assault or battery on Barrington. (Defs.' MSJ at 35.)

To sustain a claim of assault and battery against a police officer under state law, plaintiffs must provide evidence that the officer used unreasonable force. <u>Edson v. City of Anaheim</u>, /////

63 Cal. App. 4th 1269, 1274 (1998); see also Johnson v. County of
Los Angeles, 340 F.3d. 787, 794 (9th Cir. 2003).

In his declaration, Barrington asserted, "Deputy Nocon left
to question Susan Lynne Adams while Deputy Bruegel" handcuffed
and placed Barrington in the patrol car. (Barrington Decl. 4-5
(describing how Bruegel allegedly twisted Barrington's wrists,
dislocated his shoulder, and "pushed [his] head into the roof of
the car").) Barrington also testified in his *deposition* the
Bruegel arrested and allegedly injured him. (See Barrington Dep.
299:15-304:5.) Plaintiffs offer no evidence that Nocon
physically touched, let alone committed assault or battery on
Barrington.

Plaintiffs contend in their opposition papers that Nocon had
a duty to intervene upon seeing "an improper beating of a
suspect." (Pls' Opp'n to Defs.' MSJ ("Pls.' Opp'n"), filed Feb.
20, 2009, at 10-12.) Even assuming that the law cited by
plaintiffs applies here, plaintiffs offer no evidence that a
"beating" took place. Furthermore, they offer no evidence that
Nocon was in a position to stop the alleged assault and battery;
in fact, Barrington states in his declaration that Nocon "left"
to question Adams while Bruegel made the arrest. (Barrington
Decl. 4-5.)

For these reasons, defendants motion to dismiss Barrington's
state law claim for assault and battery is GRANTED as to
defendant Nocon.

**E.  Claim that Defendants Stole Authentic Guns**

Lastly, defendants ask the court to grant partial summary
judgment as to Barrington's claim that defendants stole authentic

21

Nineteenth Century Colt Single Action Army Revolvers, contending that no reasonable trier of fact could find that the firearms were authentic.

In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Although plaintiffs' gun expert was unable to render an opinion as to the value of the alleged antique revolvers (UF ¶ 250) or to obtain letters of authentication from Colt (id. ¶ 251), these are not the only relevant factors in determining the authenticity of the firearms. Barrington and his sons have personal knowledge as to the appearance of the guns. (See Barrington Decl. in Support of Opp'n., ¶ 22; Barrington Jr. Decl. in Support of Opp'n., ¶ 10.) Furthermore, Barrington has personal knowledge as to when he received the revolvers and their condition when he received them. (See Barrington Decl. in support of Opp'n ¶ 22 ("My mother gave these guns to me to hold and keep in the mid-1970's.").)

Defendants claim that plaintiffs admit that a letter of authentication is "the key" in determining the authenticity of the revolver and that the lack of such a letter definitively settles the issue of authenticity. (Defs.' Reply Mem. of P & A in Support of MSJ ("Defs.' Reply"), filed Feb 26, 2009, 15). However, plaintiffs simply admit that Colt's letters of authentication "are . . . *important* in determining the authenticity," not that such a letter is dispositive of the issue (UF ¶ 246 (emphasis added).) Defendants further contend that the only evidence that Barrington actually owned antique firearms is

Barrington's word.  However, whether the jury believes

Barrington, plaintiffs' expert, or defendants' expert is a

credibility issue that goes to the weight of the evidence.

        As such, defendants have not met their burden of showing an

absence of triable issues of material fact on the issue of the

guns' authenticity.

**CONCLUSION**

        Based on the foregoing analysis, the court makes the

following orders:

A.      Plaintiffs' partial motion for summary judgment is DENIED.

B.      Defendants' partial motion for summary judgment is:

        1.      DENIED as to plaintiffs' § 1983 claims;

        2.      DENIED as to plaintiffs' state law claims for trespass

                and conversion;

        3.      GRANTED as to plaintiffs' state law claim for assault

                and battery against defendant Nocon;

        4.      DENIED as to the issue of the revolvers' authenticity.

IT IS SO ORDERED.

DATED:      March 23, 2009

_____

FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE